994 A.2d 956

**W.M. SCHLOSSER CO., et al.**

**v.**

**UNINSURED EMPLOYERS' FUND, et al.**

**No. 112, Sept. Term, 2009.**

Court of Appeals of Maryland.

May 12, 2010.

---

196

Timothy E. McLaughlin (Ju Y. Oh of Humphreys, McLaughlin & McAleer, LLC, Baltimore), on brief, for petitioners.

Kathleen E. Wherthey, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, and Esther Goldring, Asst. Atty. Gen., Towson), on brief, for respondents.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

BATTAGLIA, J.

In this appeal, we address the issue of whether a principal contractor, W.M. Schlosser Co., should be liable to pay workers' compensation benefits to an employee of a subcontractor or whether the Uninsured Employers' Fund has to pay the claim. The employee, Jehue Q. Johnson, suffered an accidental injury while working wholly outside of this State in the District of Columbia for Rose Industrial Services, the subcontractor of Schlosser, which had workers' compensation insurance coverage in D.C. but not in Maryland, where Mr. Johnson resided. The gravamen of this case concerns *who* has the responsibility of paying benefits to Mr. Johnson—Schlosser or the Fund—not *whether* the compensation should be paid. The issue arises because Mr. Johnson filed for workers' compensation benefits in Maryland for his accidental injury that occurred solely in the District of Columbia, where Rose only had workers' compensation coverage; Schlosser had workers' compensation coverage in Maryland.

The Workers' Compensation Commission found the situs[1] for the claim to be the determining factor, when determining that Schlosser was a "statutory employer" within the meaning of the Workers' Compensation Act, Sections 9–101 to 9–1201 of the Labor and Employment Article, Maryland Code (1991, 1999 Repl. Vol.),[2] but not liable to Mr. Johnson, because there would not have been workers' compensation jurisdiction over a claim in Maryland against Schlosser if it had been the direct employer of Mr. Johnson. The Circuit Court affirmed the Commission, and the Court of Special Appeals reversed, basing its decision on public policy concerns, rather than on a situs determination, without deference to the determination by

---

1. "Situs" is defined as "[t]he location or position (of something) for legal purposes, as in *lex situs*, the law of the place where the thing in issue is situated." Black's Law Dictionary 1513 (9th ed. 2009).

2. Unless otherwise noted, all statutory references are to the Maryland Workers' Compensation Act, Sections 9–101 to 9–1201 of the Labor and Employment Article, Maryland Code (1991, 1999 Repl. Vol.), the version in effect at the time Mr. Johnson was injured.

the Workers' Compensation Commission. We granted certiorari, *Schlosser v. Uninsured Employers' Fund*, 411 Md. 355, 983 A.2d 431 (2009), to address the following questions:

1) Was the Circuit Court correct in affirming the Commission's decision based on Maryland Code, Labor and Employment Article, § 9–508 and finding no Maryland jurisdiction over the Petitioners?

2) Did the Court of Special Appeals err in reversing the Circuit Court's granting of the Petitioners' cross motion for summary judgment by finding that since the Claimant is a covered employee of Rose, he is automatically a covered employee of the alleged statutory employer, Petitioner W.M. Schlosser (hereinafter "Schlosser")?

We shall answer both questions in the affirmative and uphold the Circuit Court's acceptance of the Commission's determination that the Fund, not Schlosser, was to pay Johnson his workers' compensation benefits. In doing so, we defer to the Commission's interpretation of Section 9–508 of the Workers' Compensation Act and hold that the Court of Special Appeals erred in reversing the Circuit Court, because Mr. Johnson, who was injured while working wholly outside of this State in the District of Columbia, would not have been a "covered employee" under the workers' compensation statute, had he been directly employed by Schlosser, rather than through a subcontractor. As a result, the Uninsured Employers' Fund is liable for workers' compensation benefits payable to Mr. Johnson, because Mr. Johnson's direct employer, Rose, was uninsured in Maryland.[3]

**FACTS AND PROCEDURAL HISTORY**

On May 8, 2004, Jehue Q. Johnson was an employee of Rose Industrial Services, a hazardous waste removal company, when he was injured while acting as a hazardous waste

---

**3.** The Fund contends that the Circuit Court judge's failure to grant a summary judgment hearing was reversible error. Before us, the Fund asserted that it would like to secure review on the merits. We address solely the substantive arguments, and not the procedural arguments, because a decision on the merits in this case is preferable.

removal technician, at the Blue Plains Wastewater Treatment Plant located at 5000 Overlook Avenue, SW, in the District of Columbia. Rose's work at Blue Plains was being performed pursuant to a subcontract with W.M. Schlosser Co., a Maryland based corporation, which had contracted with Rose to do work solely at the Blue Plains site.

Following his injury, Mr. Johnson filed a claim with the Maryland Workers' Compensation Commission.[4] Mr. Johnson's employer, Rose, carried workers' compensation insurance in the District of Columbia,[5] but not in Maryland, and was, therefore, considered to be an uninsured employer. The Uninsured Employers' Fund defended the claim before the Commission and impleaded Schlosser and its insurer, the Injured Workers' Insurance Fund. Commissioner Lauren A. Sfekas presided over a hearing on November 22, 2005, to determine issues of liability and coverage and thereafter, issued an Award of Compensation, ordering that Mr. Johnson was to receive compensation for his temporary total disability. She also found that Rose had workers' compensation insurance in the District of Columbia but not Maryland, and was, therefore, a "Non–Insured Employer" in Maryland. She further ruled that Schlosser was Mr. Johnson's statutory employer, but that Schlosser, nonetheless, was not liable for Mr. Johnson's claim:

Hearing was held in the above claim at Baltimore, Maryland on November 22, 2005 on the following issues:

1) Did the claimant sustain an accidental injury arising out of and in the course of employment?

2) Was the claimant engaged in willful misconduct at the time of the alleged accidental injury arising out of and in the course of employment?

---

4. The parties mentioned at oral argument that Mr. Johnson filed for workers' compensation in the District of Columbia, but those proceedings are not part of the record in this case.

5. Rose was required to carry workers' compensation insurance in the District of Columbia pursuant to its contract with Schlosser.

3) Is the disability of the claimant the result of an accidental injury arising out of and in the course of employment?

4) Does Maryland have jurisdiction in the above claim?

5) Is Rose Industrial Services uninsured in Maryland?

6) Is W.M. Schlosser Co., Inc. the statutory employer?

7) Average Weekly Wage?

The Commission finds on the first, second and third issues that the claimant was not engaged in willful misconduct at the time he sustained an accidental injury arising out of and in the course of employment on May 8, 2004; and that the disability of the claimant is the result of the aforesaid accidental injury; and that the claimant was temporarily and totally disabled from May 8, 2004 to August 23, 2005 inclusive, and additional temporary total disability shall be reserved for future determination. The Commission finds on the fourth issue that Maryland has jurisdiction in the above entitled claim; and finds on the fifth issue that Joanne H. Rose, individually and trading as Rose Industrial Services is uninsured in the State of Maryland. The Commission finds on the sixth issue that W.M. Schlosser Co., Inc. is a statutory employer; however it is not liable to the claimant. Section 9–508 of the Labor Article states it is only liable to pay compensation they would have been liable to pay if they were the direct employer. There would be no Maryland jurisdiction over a claim against W.M. Schlosser Co., Inc. if it were the direct employer; therefore, W.M. Schlosser Co., Inc. cannot be held liable as a statutory employer. Average Weekly Wage–$850.00.

It is, therefore, this 18th day of JANUARY, 2006 by the Workers' Compensation Commission ORDERED that the above named Non–Insured Employer pay unto Jehue Q. Johnson, claimant, compensation for temporary total disability at the rate of $567.00, payable weekly, beginning May 8, 2004 and ending August 23, 2005 inclusive; and further

ORDERED that the Non–Insured Employer pay all casually connected medical expenses incurred by Jehue Q. Johnson, claimant, in accordance with the Medical Fee guide.

It is further ORDERED that the issue of additional temporary total disability, be and the same is hereby RE-SERVED for future determination.

It is further ORDERED that from the final weeks of compensation due and owing the claimant, a counsel fee in the amount of $3815.91 is approved for payment to William J. Blondell, Jr., Chartered, for legal services rendered for the claimant.

In accordance with Section 9–1005 of the Labor Article, the employer, as non-insurer, is assessed the sum of $500.00, plus an additional assessment of 15% of *this Award* and any subsequent awards of compensation made in this case, such additional assessments not to exceed, however, the sum of $2,500.00, check to be made payable to the **Subsequent Injury Fund, 320. E. Towsontown Blvd., Cranston Bldg., Suite 110, Towson, MD 21286–5318. Please list claimant's name and claim number on check.** The assessments of $500.00 shall be paid within 10 days from the date of *this Award* and any further assessments within 10 days of notice.

Lauren A. Sfekas

Commissioner

(Emboldened in original).

The Uninsured Employers' Fund filed a Motion for Rehearing with the Workers' Compensation Commission, but the Commission denied the motion and affirmed its previous Order. The Fund sought judicial review in the Circuit Court for Baltimore County and later filed a motion for summary judgment with a request for a hearing. Schlosser filed a cross-motion for summary judgment.

Before holding a hearing, Judge Thomas J. Bollinger denied the Fund's motion for summary judgment and granted Schlosser's cross-motion for summary judgment:

Upon consideration of the Uninsured Employer's Fund's Motion for Summary Judgment and all subsequent motions and memoranda filed in opposition and in support of the same, it is on this 30th day of January, 2008, the Uninsured

Employer's Fund's Motion for Summary Judgment is hereby **DENIED.**

Upon consideration of the Alleged Employer/Alleged Insurer's Cross Motion for Summary Judgment and all subsequent motions and memoranda filed in opposition and in support of the same, it is on this 30th day of January, 2008, the Alleged Employer/Alleged Insurer's Cross Motion for Summary Judgment is hereby **GRANTED.**

Accordingly, it is on this 30th day of January, 2008, the decision of the Workers' Compensation Commission dated January 18, 2006 is hereby **AFFIRMED.**

(Emboldened in original).

On appeal pressed by the Fund, the Court of Special Appeals, in a reported opinion, *Uninsured Employers' Fund v. W.M. Schlosser Co., Inc.*, 186 Md.App. 599, 975 A.2d 221 (2009), reversed, reasoning that the public policy and purpose of the Workers' Compensation Act supported its conclusion that Schlosser was liable for workers' compensation benefits, because to hold otherwise, would "lead[ ] to the type of speculation and uncertainty the Act was designed to eliminate," *id.* at 615, 975 A.2d at 230, and remanded the case to the Circuit Court with directions to grant the Fund's Motion for Summary Judgment, to deny Schlosser's Motion for Summary Judgment and to instruct the Workers' Compensation Commission to enter an order consistent with its opinion.

**STANDARD OF REVIEW**

In a recent case interpreting the Workers' Compensation Act, Judge Harrell, writing on our behalf, reiterated our oft-cited principles of statutory construction:

In interpreting a statute, the overarching objective is to ascertain the legislative intent. *Shah v. Howard County*, 337 Md. 248, 254, 653 A.2d 425, 427 (1995). The primary source from which to determine legislative intent is the plain meaning of the statutory language. *Pelican Nat. Bank v. Provident Bank of Maryland*, 381 Md. 327, 336, 849 A.2d 475, 480 (2004). "When the plain meaning is clear and unambiguous, and consistent with both the broad purposes

of the legislation and the specific purpose of the provision being interpreted, our inquiry ordinarily is at an end." *Lewis v. State*, 348 Md. 648, 653, 705 A.2d 1128, 1131 (1998). If, after considering the plain language in its ordinary and common sense meaning, two or more equally plausible interpretations arise, however, then the general purpose, legislative history, and language of the act as a whole is examined in an effort to clarify the ambiguity. *Haupt v. State*, 340 Md. 462, 471, 667 A.2d 179, 183 (1995). We will "neither add nor delete words in order to give the statute a meaning...." *Harris v. Bd. of Educ. of Howard County*, 375 Md. 21, 31, 825 A.2d 365, 371 (2003) (citations omitted). Because this case involves the Workers' Compensation Act, we also endeavor to interpret its provisions liberally, where possible, in order to effectuate the broad remedial purpose of the statutory scheme. § 9–102; *Bowen v. Smith*, 342 Md. 449, 454, 677 A.2d 81, 84 (1996) (citing *Para v. Richards Group of Wash. Ltd. P'ship*, 339 Md. 241, 251, 661 A.2d 737, 742 (1995)).

*Uninsured Employers' Fund v. Danner*, 388 Md. 649, 659, 882 A.2d 271, 277 (2005).

 With respect to reviewing a decision of the Workers' Compensation Commission, we give considerable weight to its interpretation of its statute, as suggested in *Maryland Aviation Administration v. Noland*, 386 Md. 556, 571–72, 873 A.2d 1145, 1154–55 (2005) (footnote omitted):

"A court's role in reviewing an administrative agency adjudicatory decision is narrow, *United Parcel v. People's Counsel*, 336 Md. 569, 576, 650 A.2d 226, 230 (1994); it 'is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.' *United Parcel*, 336 Md. at 577, 650 A.2d at 230. *See also* Code (1984, 1995 Repl. Vol.), § 10–222(h) of the State Government Article; *District Council v. Brandywine Enterprises, Inc.*, 350 Md. 339, 349, 711 A.2d 1346, 1350–1351 (1998); *Catons-*

*ville Nursing v. Loveman,* 349 Md. 560, 568–569, 709 A.2d 749, 753 (1998)."

"In applying the substantial evidence test, a reviewing court decides 'whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.' *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 512, 390 A.2d 1119, 1123 (1978). *See Anderson v. Dep't of Public Safety,* 330 Md. 187, 213, 623 A.2d 198, 210 (1993). A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. *CBS v. Comptroller,* 319 Md. 687, 698, 575 A.2d 324, 329 (1990). A reviewing court ' "must review the agency's decision in the light most favorable to it; . . . the agency's decision is prima facie correct and presumed valid, and . . . it is the agency's province to resolve conflicting evidence" and to draw inferences from that evidence.' *CBS v. Comptroller, supra,* 319 Md. at 698, 575 A.2d at 329, quoting *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 834–835, 490 A.2d 1296, 1301 (1985). *See Catonsville Nursing v. Loveman, supra,* 349 Md. at 569, 709 A.2d at 753 (final agency decisions 'are *prima facie* correct and carry with them the presumption of validity')."

"Despite some unfortunate language that has crept into a few of our opinions, a court's task on review is *not* to 'substitute its judgment for the expertise of those persons who constitute the administrative agency,' *United Parcel v. People's Counsel, supra,* 336 Md. at 576–577, 650 A.2d at 230, quoting *Bulluck v. Pelham Wood Apts., supra,* 283 Md. at 513, 390 A.2d at 1124. Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. *Lussier v. Md. Racing Commission,* 343 Md. 681, 696–697, 684 A.2d 804, 811–812 (1996), and cases there cited; *McCullough v. Wittner,* 314 Md. 602, 612, 552 A.2d 881, 886 (1989) ('The interpretation of a statute by those officials charged with

administering the statute is ... entitled to weight'). Furthermore, the expertise of the agency in its own field should be respected. *Fogle v. H & G Restaurant,* 337 Md. 441, 455, 654 A.2d 449, 456 (1995); *Christ v. Department of Natural Resources,* 335 Md. 427, 445, 644 A.2d 34, 42 (1994) (legislative delegations of authority to administrative agencies will often include the authority to make 'significant discretionary policy determinations'); *Bd. of Ed. For Dorchester Co. v. Hubbard,* 305 Md. 774, 792, 506 A.2d 625, 634 (1986) ('application of the State Board of Education's expertise would clearly be desirable before a court attempts to resolve the' legal issues)."

## DISCUSSION

 When an individual seeks to secure workers' compensation coverage for an injury sustained on the job, the first question to be resolved is whether he or she is a "covered employee." An individual is a "covered employee" if he or she is "in the service of an employer under an express or implied contract of apprenticeship or hire." Section 9–202. Section 9–203, titled "Site of employment," provides geographical limitations for the covered employee definition, by incorporating the language of situs and states that an individual is not a covered employee if "employed wholly outside of this State":

(a) *In general.*—Except as otherwise expressly provided, an individual is a covered employee while working for the employer of the individual:

(1) in this State;

(2) outside of this State on a casual, incidental, or occasional basis if the employer regularly employs the individual within this State; or

(3) wholly outside the United States under a contract of employment made in this State for the work to be done wholly outside of the United States.

(b) *Incidental service in State.*—(1) An individual is not a covered employee while working in this State for an employer only intermittently or temporarily if:

(i) the individual and employer make a contract of hire in another state;

(ii) neither the individual nor the employer is a resident of this State;

(iii) the employer has provided workers' compensation insurance coverage under a workers' compensation or similar law of another state to cover the individual while working in this State;

(iv) the other state recognizes the extraterritorial provisions of this title; and

(v) the other state similarly exempts covered employees and their employers from its law.

(2) If an individual is exempted from coverage under this subsection and injured in this State while working for the employer of the individual, the sole remedy of the individual is the workers' compensation or similar law of the state on which the exemption is based.

(3) A certificate from an authorized officer of the workers' compensation commission or similar unit of another state certifying that the employer is insured in that state and has provided extraterritorial insurance coverage for the employees of the employer while working within this State is prima facie evidence that the employer carries that compensation insurance.

(c) *Outside State.*—Except as otherwise expressly provided, an individual who is employed wholly outside of this State is not a covered employee.

The determination of a "covered employee" precedes that of a "statutory employer," upon which the Fund's argument relies. The term "statutory employer" is one used by the Court as early as 1928 in *State, to Use of Hubert v. Benjamin F. Bennett Building Co.*, 154 Md. 159, 162, 140 A. 52, 53 (1928), to describe the relationship of a principal contractor to an injured employee of its subcontractor, which may expose it to liability under the workers' compensation statute but insulate it from tort liability. *See Rodrigues–Novo v. Recchi America, Inc.*, 381 Md. 49, 58, 846 A.2d 1048, 1053 (2004).

Section 9–508 of the Maryland Workers' Compensation Act states that, under certain conditions, a principal contractor is liable to pay a covered employee any compensation the principal contractor would have had to pay had the covered employee been employed directly by the principal contractor and provides in pertinent part:

> (a) *In general.*—A principal contractor is liable to pay to a covered employee or the dependents of the covered employee any compensation that the principal contractor would have been liable to pay had the covered employee been employed directly by the principal contractor if:
>
>> (1) the principal contractor undertakes to perform any work that is part of the business, occupation, or trade of the principal contractor;
>>
>> (2) the principal contractor contracts with a subcontractor for the execution by or under the subcontractor of all or part of the work undertaken by the principal contractor; and
>>
>> (3) the covered employee is employed in the execution of that work.

In the present case, that Mr. Johnson is a covered employee of Rose is not disputed. Rather, whether Mr. Johnson is a covered employee of Schlosser is the disputed issue. Schlosser, of course, argues that Mr. Johnson could not have been its "covered employee," because he was employed wholly outside of the State in the District of Columbia and thus, did not meet the requirement of Section 9–203. The Fund asserts that once Mr. Johnson was determined to be a covered employee of Rose, he was always a covered employee, and thus, Schlosser, as a statutory employer, was liable to the same extent as Rose, pursuant to Section 9–508 of the Act. The Fund contends that Section 9–508 defines the *extent* of a statutory employer's liability, rather than including a "condition precedent to the very *existence* of the statutory employer's liability."

What is dispositive in the present case is that, "to be a 'covered employee' and therefore eligible to bring, and

maintain, a worker's compensation claim in this State, a worker must be an employee, § 9–202(a), and ... 'the site of one's employment is the critical element for' making that determination." *McElroy Truck Lines, Inc. v. Pohopek*, 375 Md. 574, 581, 826 A.2d 474, 478 (2003). In *Gatton v. Sline Co., Inc.*, 199 Md. 578, 87 A.2d 524 (1952), Gatton was working for Sline, a Maryland company, in West Virginia after having been hired in West Virginia. We held under the precursor to Sections 9–202 and 9–203, where the definition of a covered employee was the same, that an employee who was hired in West Virginia by a Maryland company, but worked exclusively in West Virginia, was not a covered employee, and his widow could not claim benefits under the Act. *See also Hodgson v. Flippo Constr. Co., Inc.*, 164 Md.App. 263, 883 A.2d 211 (2005); *L.R. Willson & Sons v. Garrett*, 76 Md.App. 120, 543 A.2d 875 (1988). Thus, the determination of whether an injured employee is covered depends on both the employment relationship and the situs of the work.

There is no dispute that Rose and Mr. Johnson were engaged in an employer-employee relationship and that Mr. Johnson performed work for Rose in several job sites throughout Maryland, the District of Columbia, and Virginia. The Fund would like us to hold that it does not matter that as to Schlosser, Mr. Johnson worked and was injured wholly outside of Maryland. The Fund, thus, desires to "skip over" the first step in determining coverage, ignore situs restrictions, and determine that Schlosser, as statutory employer, is statutorily liable for workers' compensation benefits for one of the subcontractor's employees, regardless of the fact that as to Schlosser, Mr. Johnson was not a covered employee under the statute. Had Mr. Johnson worked directly for Schlosser, his work would have been "wholly outside of this State" under Section 9–203(c); therefore, he was not a "covered employee" of Schlosser.

The Fund cites numerous cases for the proposition that a covered employee of a subcontractor is a covered employee of the principal contractor, regardless of situs, but all of its cases

depend upon extant employment relationships in Maryland. *See Uninsured Employers' Fund v. Danner,* 388 Md. 649, 882 A.2d 271 (2005); *Rodrigues–Novo v. Recchi America, Inc.,* 381 Md. 49, 846 A.2d 1048 (2004); *Great Atlantic & Pacific Tea Co., Inc. v. Imbraguglio,* 346 Md. 573, 697 A.2d 885 (1997); *Uninsured Employers' Fund v. Lutter,* 342 Md. 334, 676 A.2d 51 (1996); *Para v. Richards Group of Washington Ltd. P'ship,* 339 Md. 241, 661 A.2d 737 (1995); *Inner Harbor Warehouse, Inc. v. Myers,* 321 Md. 363, 582 A.2d 1244 (1990); *Lathroum v. Potomac Elec. Power Co.,* 309 Md. 445, 524 A.2d 1228 (1987); *Honaker v. W.C. and A.N. Miller Dev. Co.,* 278 Md. 453, 365 A.2d 287 (1976), *reaff'd* 285 Md. 216, 401 A.2d 1013 (1979); *Roland v. Lloyd E. Mitchell, Inc.,* 221 Md. 11, 155 A.2d 691 (1959); *State, to Use of Hubert v. Benjamin F. Bennett Bldg. Co.,* 154 Md. 159, 140 A. 52 (1928); *Commercial Union Ins. Co. v. Harleysville Mut. Ins. Co.,* 110 Md.App. 45, 675 A.2d 1059 (1996); *Cogley v. Schnaper & Koren Construction Co.,* 14 Md.App. 322, 286 A.2d 819 (1972).

The Fund also cites *Kacur v. Employers Mutual Casualty Co.,* 253 Md. 500, 254 A.2d 156 (1969), as supportive of its contention. In *Kacur,* an employee was injured in Maryland while employed by a business located in Pennsylvania. The employer's insurance company denied the claim because its policy limited its coverage to claims in Pennsylvania. We denied the employer's claim of insulation, because jurisdiction was proper in Maryland where the employee worked and was injured. In the present case, jurisdiction as to Rose was asserted as proper in Maryland and in the District of Columbia, because Mr. Johnson was employed by Rose in Maryland and the District of Columbia where he also was injured. As to Schlosser, Mr. Johnson was not a covered employee, because his employment was wholly outside Maryland.

The Fund further argues that we should ignore the situs requirements of the Workers' Compensation Act in order to further the Act's benevolent concept and remedial purpose. This argument, however, ignores the fact that the Fund's

purpose, pursuant to Section 9–1002 of the Act,[6] is also benevolent and remedial, that being "to protect injured workers whose employers failed, either willfully or negligently, to carry workers' compensation insurance for them." *Uninsured Employers' Fund v. Lutter*, 342 Md. 334, 345, 676 A.2d 51, 56 (1996). Here, again, the issue is not *whether* Mr. Johnson gets paid, but *who* is to pay. The Uninsured Employers' Fund cannot deny its own remedial purpose in order to trumpet the remedial purpose of the workers' compensation statute.

The Fund contends that our holding in favor of Schlosser would allow statutory employers to evade liability under the Act "while also enjoying complete exemption from all tort liability to the injured claimant," and suggests the application of *Uninsured Employers' Fund v. Lutter*, 342 Md. 334, 676 A.2d 51 (1996), dictates Schlosser's liability. In *Lutter*, we held that an owner of a close corporation, who had been injured at a Maryland job site but who had knowingly and deliberately decided to operate the corporation without workers' compensation insurance, was not a "covered employee" entitled to collect benefits from the Fund. In the present case, the Fund argues that Schlosser, like Lutter, should not be allowed "to benefit from its own failure to ensure adequate coverage by its subcontractors, and to obtain free workers' compensation from the Fund. . . ."

*Lutter*, though, is distinguishable from the present case, because Schlosser did attempt to ensure adequate coverage by its subcontractor, by requiring Rose to secure workers' com-

---

**6.** Section 9–1002 entitled "Payment from Uninsured Employers' Fund" provides in pertinent part:

(e) *Application for payment from Fund.*—If the employer does not pay the award and does not notify the Commission of its objection to the award in accordance with subsection (d) of this section, the covered employee or the dependents of the covered employee may apply to the Director for payment from the Fund.

(f) *Payment or application for review.*—On receipt of an application for payment, the Fund may:

(1) pay the award; or

(2) apply for review under subsection (g) of this section.

pensation coverage for Mr. Johnson at the job site in the District of Columbia. The Fund asserts that Schlosser had the additional responsibility of requiring Rose to have Maryland workers' compensation insurance because Mr. Johnson was a Maryland resident. To accept the Fund's argument would require us to accept that Schlosser was somehow shirking its responsibility in order "to obtain free workers' compensation from the Fund," which the Commission did not find. We agree with Schlosser that to hold out-of-state principal contractors liable when they subcontract work with Maryland subcontractors for work to be done wholly outside of this State, would place a heavy burden on principal contractors to verify that its subcontractors have workers' compensation coverage in every possible jurisdiction in which a direct employee lived, was a resident, was connected, etc.

■■■ We also find disingenuous the Fund's argument that to hold in favor of Schlosser would impose an undue burden on the Workers' Compensation Commission to decipher "complex facts of who is doing what, where, and when." It was the Workers' Compensation Commission that interpreted its own statute and it is its burden to find out the facts of "who is doing what, where, and when"; obviously, the Commission determined it was capable of complying with its own statute.[7]

---

7. It is interesting to note that Nevada's workers' compensation statute explicitly states that employers are not required to maintain "industrial insurance" coverage in that State for employees who have been hired or regularly employed in Nevada, but who are performing work exclusively in another state. Nev.Rev.Stat. Ann. § 616B.600 (LexisNexis 2006). The Nevada statute provides that "[i]f the employee receives personal injury by accident arising out of and in the course of his employment, any claim for compensation must be filed *in the state in which the accident occurred,* and such compensation is the exclusive remedy of the employee or his dependents." Nev.Rev.Stat. Ann. § 616B.600(4) (emphasis added). The Nevada statute also provides, however, that the employer is not prevented from maintaining coverage in Nevada for an employee working outside of the state, but that under Nev.Rev.Stat. Ann. § 616C.195, if an employee is personally injured outside of Nevada but accepts compensation or benefits in Nevada, the employee or his or dependents must execute and deliver to the employer a waiver releasing the employer of any liability under the laws of any

Further, we repeatedly have recognized that, under the workers' compensation statute, a decision regarding situs of employment is dependent on case-specific facts and circumstances, *see McElroy Truck Lines,* 375 Md. at 586, 826 A.2d at 481, and the present situation is no less fact intensive.

In conclusion, the Uninsured Employers' Fund is liable to pay Mr. Johnson's workers' compensation benefits, because Rose was uninsured in Maryland. We give deference to the Workers' Compensation Commission for its interpretation of its own statute and affirm the Commission's decision.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

HARRELL and BARBERA, JJ., Dissent.

Dissenting Opinion by HARRELL, J., which BARBERA, J., joins

I dissent. I would affirm the judgment of the Court of Special Appeals (which reversed the Circuit Court for Baltimore County) for the reasons stated in that court's reported opinion in this matter, 186 Md.App. 599, 975 A.2d 221 (2009).

Judge BARBERA authorizes me to state that she joins this dissenting opinion.

---

other state. In Maryland, there is no parallel statutory remedy benefitting both the employee and the employer.